UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES MANUEL BISHOP, JR., <br> JOANN V. BISHOP, INDIVIDUALLY, AND <br> AS THE LEGAL REPRESENTATIVES OF <br> JAMES MANUAL BISHOP, JR.; AND <br> SHAUN C. BISHOP, INDIVIDUALLY, AND AS <br> THE LEGAL REPRESENTATIVE OF JAMES <br> MANUEL BISHOP, JR. | CIVIL ACTION NO. 07-2832 <br><br> SECTION N <br><br> MAG. 5 |
| Plaintiffs | |
| VS. | |
| SHELL OIL COMPANY, SHELL CHEMICAL LP <br> D/B/A SHELL CHEMICAL COMPANY, <br> MARATHON OIL COMPANY, MURPHY OIL <br> USA, INC., EL PASO ENERGY, E.S.T. <br> COMPANY, AS TRUSTEE FOR EPEC OIL <br> COMPANY LIQUIDATING TRUST, EPEC OIL <br> COMPANY F/K/A TENNECO OIL COMPANY, <br> BP PRODUCTS NORTH AMERICA, INC. F/K/A <br> AMOCO OIL COMPANY F/K/A BP OIL COMPANY, <br> RADIATOR SPECIALTY COMPANY, AND <br> WD-40 COMPANY | |
| Defendants | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF INDUSTRIAL HYGIENIST JOHN SPENCER

El Paso Energy E.S.T. Company, Marathon Oil Company, Shell Oil Company, and Shell Chemical L.P. (sometimes hereinafter collectively "Defendants"), submit this Memorandum in Opposition to Plaintiffs' Motion to Exclude Testimony of Defendants' Putative Industrial Hygienist John Spencer (Doc. 207) (hereafter "Plaintiffs' Motion"). In addition to this Memorandum, Defendants submit the Declaration of John Spencer, CIH, CSP, with attachments.

Plaintiffs' Motion lacks any merit whatsoever. It is filled with hollow rhetoric,

1634872_1.DOC

1

misstatements of the record, and strained arguments based on immaterial information that was not even made available to Plaintiffs' own industrial hygiene expert, Mr. Roy Rando, for use in his April 7, 2009 report, which was the subject of Mr. Spencer's May 8, 2009 report.  As set forth more fully below, Mr. Spencer employed methods and practices widely accepted in the field of industrial hygiene in formulating the opinions he presents in his report. His opinions are amply supported by the scientific literature and the record evidence in this case.

### I. PLAINTIFFS DID NOT SUBMIT *ANY* EXPERT EVIDENCE COMMENTING ON THE METHODOLOGY USED BY MR. SPENCER IN HIS REPORT

The first fundamental flaw in Plaintiffs' Motion is their failure to submit *any* expert testimony evaluating Mr. Spencer's methodology or any specific scientific or regulatory standard that Mr. Spencer purportedly did not follow. All Plaintiffs offer is the argument of counsel and a hodge-podge of exhibits that do not discuss the specific methodology Mr. Spencer employed in preparing his report. On this basis, alone, Plaintiffs' Motion should be denied. *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1315-16 (9th Cir.1995).

### II. MR. SPENCER FOLLOWED A COMPREHENSIVE METHODOLOGY IN ACCORDANCE WITH WIDELY-ACCEPTED PRINCIPLES IN THE FIELD OF INDUSTRIAL HYGIENE, AS REFLECTED IN THE NUMEROUS SCIENTIFIC AND REGULATORY REFERENCES IDENTIFIED IN HIS REPORT

Mr. Spencer lists very specifically each of the seven (7) opinions he reached in this case. He lists them on pages 21-22 of his report. In the "summary" on page 2 of his Report, he summarizes the four broader areas into which his specific opinions fall: (1) Mr. Rando's dose reconstruction exposure assessment for Mr. Bishop is based on unsupported and inaccurate assumptions, and is unreliable; (2) Mr. Rando's methodology

for quantifying dermal dose has not been scientifically validated, is not reliable, and is not a standard and acceptable industrial hygiene practice for comparison with occupational health standards; (3) Mr. Rando's cumulative exposure dose, even without correcting for his overestimation, is well below the benzene occupational health standards of the time period Mr. Bishop claims to have been exposed and is also below the current-day occupational health standard for benzene; and (4) the facts in this case do not support Mr. Rando's conclusion that Mr. Bishop experienced exposures to benzene that frequently exceeded modern day standards and guidelines on a daily and annual basis.

Plaintiffs do not clearly articulate which of the seven (7) opinions listed in Mr. Spencer's report they are focusing upon. Regardless, it is clear simply from reading Mr. Spencer's report and his attached Declaration that he used an appropriate, scientifically-based methodology in reaching each of his opinions.

Mr. Spencer explains the appropriate methodology that an industrial hygienist must use when preparing a retrospective exposure assessment, and he provides ample citation to appropriate scientific and regulatory authorities, including guidance documents from the National Institute of Occupational Safety and Health ("NIOSH") and the United States Occupational Safety and Health Association ("OSHA"). *See,* Spencer Report (Document 207-3), at pp. 2-7 and notes 4-23. *See also,* Exhibit A, Spencer Declaration, ¶ 1 (summarizing the information needed for an exposure assessment analysis and noting that "a retrospective exposure assessment for Mr. Bishop is not possible due to insufficient exposure information provided in the case materials and testimony.") He then provides a comprehensive discussion of the evidence that is

1634872_1.DOC

3

available in this case concerning Mr. Bishop's work history and alleged exposures, with appropriate references to the record. *See,* Spencer Report (Document 207-3), at pp. 7-9, and notes 24-25. He then identifies the relevant occupational exposure limits with reference to the appropriate OSHA and American Conference of Governmental Industrial Hygienists ("ACGIH") standards and publications. *See,* Spencer Report (Document 207-3), at pp. 9-10 and notes 26-27. He follows these discussions with a detailed analysis and critique of Mr. Rando's exposure assessment, and he explains the many areas in which Mr. Rando failed to follow accepted methodology in reaching his conclusions. Mr. Spencer's analysis is replete with references to published scientific literature and authoritative guidance documents from OSHA, NIOSH, ACGIH, and the American Industrial Hygiene Association ("AIHA"). *See,* Spencer Report (Document 207-3), at pp. 10-23 and notes 28-43. He lists on pages 23-28 of his report approximately sixty-nine (69) references to scientific publications, authoritative references, and regulatory guidance documents.

Therefore, Plaintiffs' statement that Mr. Spencer "has engaged in a process of denial, rather than any scientific or legitimate academic endeavor that would in any way assist the trier of fact" is simply hollow rhetoric that is completely contrary to the specific detail provided in Mr. Spencer's report.

### III. RESPONSE TO SPECIFIC ARGUMENTS IN PLAINTIFFS' MEMORANDUM

Plaintiffs' Memorandum is a disjointed series of arguments that, for the most part, do not focus on methodology issues. While much of their argument is immaterial and unfocused, Defendants nevertheless will respond briefly to ensure the record is accurate.

1634872_1.DOC

A.  Mr. Spencer did not "discount peer-reviewed literature for exposure of maintenance workers at oil refineries."

Plaintiffs state that "[Mr. Spencer] discounts peer-reviewed literature for exposure of maintenance workers at oil refineries in an attempt to discredit Dr. Rando."[1] Plaintiffs do not identify the "peer-reviewed" literature they contend Mr. Spencer purportedly "discounted," so it is difficult to respond to such a bald assertion. However, it appears that Plaintiffs are referring to Mr. Rando's use of a paper entitled "Benzene Exposure in the Petroleum Refining Industry" by Spear, R.C., et al. (1987) (hereafter "Spear paper"). To the extent this is the "peer-reviewed" literature to which they are referring, then Plaintiffs' statement that Mr. Spencer "discounted" it is simply wrong.

As explained in his Report and in his Declaration, at ¶2, Mr. Spencer did not "discount" the Spear paper. Mr. Spencer simply noted that the data set described in the Spear paper is not sufficiently specific to use in the manner Mr. Rando used it. Mr. Rando used the Spear paper to attempt to calculate Bishop's purported exposure levels at Marathon's refinery because he claims he did not have specific industrial hygiene monitoring data for the Marathon plant.[2] In essence, Mr. Rando – in the purported absence of any monitoring data from Marathon and recognizing that there was no other testimony or evidence whatsoever as to the level of benzene Bishop may have been exposed to while at Marathon's facility – tried to "cure" this incurable gap in evidence by using a paper that discusses exposure levels at different facilities involving different workers. Furthermore, the data provided in Spears "did not contain specific exposure measurements, mean or median exposure values but presented the sampling information

---

[1] Plaintiffs' Memorandum, p. 6.
[2] His understanding is incorrect because Marathon industrial hygiene monitoring data was provided, as noted by Spencer in his report. Spencer Report, Document 207-3, p. 13.

by category, e.g., non-detect, greater than 1.0 ppm, and greater than 2.0 ppm." Spencer Report (Document 207-3), at p. 13.    As Mr. Spencer explained, "this data set was representative of primarily non-specific, various location maintenance operations with some pipefitter and mechanic information." Spencer Report (Document 207-3), at p. 13. Therefore, the data could not be used to perform a reliable exposure assessment for Bishop's exposures at a particular facility.

Thus, Mr. Spencer did not "discount" the Spears paper. He simply noted, quite appropriately, that the paper cannot be used as a "gap filler" to provide an evidentiary basis to reliably estimate what Bishop may have been exposed to at Marathon's facility when there is an absence of any *facts* specific to the actual working conditions Bishop experienced while at Marathon. Indeed, this precise point was recognized by the Fifth Circuit in *Allen v. Pennsylvania Engineering Corp.*, 102 F.3d 194 (5th Cir. 1996). In *Allen,* the Court held that it was not appropriate to estimate the plaintiff's exposure level by resorting to extrapolations based on information regarding facilities other than the one at issue. *Allen,* 102 F.3d at 198 (holding it was not appropriate for expert to rely on "… extrapolations concerning EtO handling at the hospital where [plaintiff] worked based on conditions in other hospitals in the 1970's).

      B.     <u>Mr. Spencer did not "ignore" the Shell industrial hygiene monitoring data; he specifically relied upon it and discusses it in his report.</u>

Plaintiffs' assertion that "Mr. Spencer failed to review the internal data of Shell Norco and the industrial hygiene department…" is simply a misstatement of Mr. Spencer's report.[3] Mr. Spencer not only considered the Shell data, he thoroughly analyzed the data and states his conclusions. *See,* Spencer Report (Document 207-3), at

---

[3] Plaintiffs' Memorandum, p. 6.

1634872_1.DOC

pp. 13-14; and Spencer Declaration, ¶4. In fact, Mr. Spencer commented on the Shell data again in the Declaration he prepared on May 27, 2009 that was submitted in support of Shell's Motion for Summary Judgment on the Issue of Specific Causation (Document No. 202). Commenting on the Shell industrial hygiene data, he stated there:

> As noted more fully in my report, I reviewed the detailed industrial hygiene monitoring data from the Shell Norco facility. With respect to Shell's industrial hygiene monitoring data for pipefitters working in the GHT, GO-1, and DU-5 process areas, the data shows that the geometric mean of the data set was well below the benzene health standards in effect at the time of Mr. Bishop's work at Shell, and in fact, was below today's occupational exposure limits (OEL). These OELs were developed to be protective of human health.[4]

In light of Mr. Spencer's report and his prior Declaration, it is puzzling how Plaintiffs can represent to this Court that "Mr. Spencer failed to review the internal data of Shell Norco and the industrial hygiene department...."

Plaintiffs also assert that Mr. Spencer failed to review the testimony of Mr. Frank Parker.[5] As noted in Mr. Spencer's Declaration, however, he did not consider the affidavit because it was not even provided to Plaintiffs' industrial hygiene expert, Dr. Rando. Mr. Spencer's report was prepared to address Dr. Rando's report, and the Parker affidavit is nowhere mentioned or considered in the Rando report. Furthermore, as discussed more fully in Section E below, Mr. Parker's affidavit does not contain any information that would be helpful in conducting a retrospective exposure assessment, so it is immaterial to the issues presented here. *See,* Spencer Declaration, ¶5.

---

[4] Document No. 202-6. Additional Copy attached hereto as Exhibit B.
[5] Plaintiffs' Memorandum, p. 6.

1634872_1.DOC

7

      C.    <u>Mr. Spencer relied on accepted industrial hygiene methodology in his critique of Dr. Infante's use of odor threshold data in an exposure assessment model.</u>

Mr. Spencer's critique of the use of odor thresholds to perform a quantitative exposure assessment is well-grounded in the industrial hygiene literature and in the facts of this case.

First, as noted in Spencer's Report and in his Declaration, there is simply no factual basis to even begin an "odor threshold" analysis here because there is no evidence that Mr. Bishop ever reported smelling benzene at any of the facilities at issue. Spencer Report, pp. 18-19 (under "Analysis of Peter F. Infante Report"), and Spencer Declaration, ¶¶ 6-7. Mr. Bishop was never deposed and his testimony as to potential benzene exposures at any of the facilities was never perpetuated in any manner. There is not one single piece of evidence that Mr. Bishop detected the odor of benzene anywhere at any facility at any time. Dr. Infante tacitly concedes this, but attempted to rely on the co-worker's deposition testimony (Mr. Fuxan). As Mr. Spencer correctly points out in his report, however, it is absurd to rely on Mr. Fuxan's testimony. Mr. Fuxan cannot be used as a "surrogate plaintiff" for Mr. Bishop. Furthermore, Mr. Fuxan admitted he could not identify the odor of benzene,[6] and he admitted that most of the time he was not working side-by-side with Mr. Bishop. Therefore, the "odor threshold" analysis is a non-starter.

Equally important, odor thresholds are not a reliable means to quantify actual ambient hydrocarbon concentrations and should not be relied upon in a formal exposure assessment. Spencer Declaration, ¶6. It is an accepted tenet of exposure assessment

---

[6] Deposition of Mr. Robert Fuxan, pp. 75-77, attached as Exhibit C.

1634872_1.DOC

8

methodology that qualitative odor perceptions are of limited value and are far less accurate than quantitative data. *Id.* Olfactory thresholds are extremely variable among subjects. Precise threshold values do not exist, and an odor panelist's ability to detect an odor stimulus varies as a result of random variation in factors including alertness, attention, fatigue, events at the molecular level, and health status. Attempts at estimating a dose based on symptomology or odor detection are further confounded by the phenomenon that people have been shown to attribute spontaneous health effects to the detection of odors which are benign when presented with odors that they believed to be harmful. Mr. Spencer explained these points, in detail, in his report and provided authoritative references. Spencer Report (Document 207-3), at pp. 18-19, and notes 38-43; Spencer Declaration, ¶ 6.

Plaintiffs' cite the Reference Manual on Scientific Evidence, Reference Guide on Medical Testimony in support of using odor thresholds to calculate an exposure assessment, but the Reference Guide criteria actually make Spencer's point and undermine Rando's and Infante's position. The Reference Guide identifies four "cardinal" pieces of exposure information, and the facts here demonstrate that Rando did not have adequate data on *any* of these items, much less all of them:

1. <u>The material or agent in the environmental exposure should be identified.</u> The chemical products Mr. Bishop was exposed to while working at each of the refineries was not identified by Mr. Bishop because there is no testimony from Mr. Bishop. Testimony from a co-worker, Mr. Fuxan, did not provide specific information on what Mr. Bishop was exposed to since Mr. Fuxan could not provide information as to specific jobs, on specific pieces of equipment, at specific facilities, for specific periods of time.

2. <u>The magnitude or concentration of an exposure should be estimated, including use of clinical reference.</u> There is no testimony from Mr. Bishop that he experienced any symptoms or smelled any benzene. Estimating Mr. Bishop's exposure to benzene based upon odor smelled by Mr. Fuxan for unidentified chemicals cannot

be representative of the exposure concentration that Mr. Bishop may have encountered.

3. <u>The temporal aspects of the exposure should be determined-whether the exposure was short-term and lasted a few minutes, days, weeks, or months, or was long-term and lasted for years. Similarly, the latency period between exposure and disease onset is often critical.</u> Mr. Bishop's exposure duration to unspecified chemicals has not been determined based upon the testimony provided in this case. There is no data to determine the frequency, duration, or intensity of any of Mr. Bishop's alleged exposures at any facility.

4. <u>If possible, the impact on disease or symptoms should be defined.</u> Disease or symptoms related to a specific chemical exposure cannot be correlated with an exposure to an unknown chemical exposure.[7]

For these reasons, Mr. Spencer's critique of the use of odor threshold data is correct and well-supported in the industrial hygiene literature and in the Federal Reference Manual.

    D.    <u>Mr. Spencer relied on OSHA regulations and guidelines in concluding that Mr. Bishop's direct employers (i.e., the contractors) had the duty to warn, equip, and train Mr. Bishop</u>

Plaintiffs' argument in section E of their Memorandum is confusing. It does not refer to any methodology issues, and instead appears to be nothing more than Plaintiffs arguing their case on the merits.

For purposes of this Daubert motion, the pertinent issue is what methodology Spencer uses to support his conclusion that Mr. Bishop's direct employers (i.e., the contractor companies) had the duty to train, equip, and warn Mr. Bishop regarding workplace hazards. As demonstrated plainly in Spencer's report, Spencer relied on the pertinent OSHA regulations and guidelines to support his opinions. His report contains numerous references to the pertinent OSHA regulations that squarely place the duty on Mr. Bishop's employers (i.e., the contractors) to provide adequate training and personal

---

[7] Spencer Declaration, ¶7.

protective equipment to their employees. See, Spencer Report, pp. 19-21; and Spencer Declaration, ¶8.

Plaintiffs' discussion of the Parker affidavit is puzzling. Parker's affidavit is immaterial. He is not competent to testify regarding who has the duty to provide training and equipment to employees. Furthermore, Plaintiffs' expert, Rando, did not even consider or discuss the Parker affidavit.

Therefore, Plaintiffs' entire discussion in section E of their Memorandum is irrelevant. Spencer used a reliable and acceptable methodology in reaching his opinions regarding Mr. Bishop's employers' duties – namely, the relevant OSHA regulations and guidelines.

E.  <u>Plaintiffs' References to the Parker Affidavit and to Minimal Risk Levels Are Irrelevant</u>

In sections G and H of their Memorandum, Plaintiffs again embark upon argument that is not focused on any methodology issues. They refer to hearsay testimony of Mr. Frank Parker and attempt to argue that Shell was negligent. Plaintiffs' argument is completely out of place in a *Daubert* motion that is supposed to focus on whether Mr. Spencer employed proper scientific methodology in reaching his opinions.

It is quite curious that Plaintiffs spend so much time discussing the hearsay affidavit of Mr. Parker considering that Plaintiffs' expert, Rando, did not discuss this affidavit in any manner in his report. As noted by Spencer in his Declaration, he did not consider the Parker affidavit because the affidavit was not identified or discussed in any manner by Rando in his report. Therefore, the affidavit is completely immaterial to Rando's report, to Spencer's report, and therefore, to this Motion.

Furthermore, as noted by Spencer, the Parker affidavit does not provide any specific facts that would assist in conducting a retrospective exposure assessment for Mr. Bishop. The affidavit states that Parker does not recall industrial hygiene monitoring in the 1970s, and that he did not spend time at any plants after he moved to Houston from California in October, 1974. The affidavit does not even state that Parker ever personally spent *any* time at the Shell Norco facility. Therefore, Parker's affidavit does not provide *any* factual information that could be useful for a retrospective exposure assessment.

Furthermore, as noted by Spencer in his report and in his Declaration, industrial hygiene data for the Shell facility does exist, and he thoroughly analyzed the data in his report. The data demonstrates that contractor pipefitters at the Shell Norco facilities were *not* exposed to levels of benzene in excess of occupational exposure limits.[8]

Plaintiffs' reference to "inhalation Minimal Risk Levels" ("MRLs") is patently irrelevant. In fact, their own expert, Rando, did not mention or discuss MRLs in any manner whatsoever in his report. Since Rando did not discuss MRLs – and as explained below, it was quite appropriate for him *not* to consider them in this case – Spencer likewise did not discuss them. Therefore, the whole issue of MRLs is irrelevant to the issue before this Court, namely, whether Spencer used sound methodology in his report.

Furthermore, the reason neither Rando nor Spencer considered the MRLs in their respective reports is because they are completely irrelevant to this case. As explained by Spencer, MRLs are irrelevant for the following reasons:

1) The MRL is not based upon cancer risk assessment methodologies;

---

[8] Spencer Report, pp. 13-14; Spencer Declaration, ¶4.

1634872_1.DOC

12

2 ) The MRL is established to address risk associated with continuous exposure in the environment, and not to address risk associated with intermittent, occupational exposures; and

3) ATSDR does not intend MRLs to be used as action levels for the purpose of regulation.[9]

The following statement from ATSDT, the agency that establishes the MRLs, makes the point:

> An MRL is an estimate of the daily human exposure to a hazardous substance that is likely to be without appreciable risk of adverse noncancer health effects over a specified duration of exposure. MRLs are based on non-cancer health effects only and are not based on a consideration of cancer effects. These substance-specific estimates, which are intended to serve as screening levels, are used by ATSDR health assessors to identify contaminants and potential health effects that may be of concern at hazardous waste sites. It is important to note that MRLs are not intended to define clean-up or action levels.
>
> * * *
>
> ... Serious health effects (such as irreparable damage to the liver or kidneys, or birth defects) are not used as a basis for establishing MRLs. Exposure to a level above the MRL does not mean that adverse health effects will occur.
>
> MRLs are intended to serve as a screening tool to help public health professionals decide where to look more closely. They may also be viewed as a mechanism to identify those hazardous waste sites that are not expected to cause adverse health effects.... [10]

F.   <u>Spencer's opinions are relevant to the issue of specific causation</u>

Plaintiffs state that Spencer should be precluded "from testifying concerning the levels of benzene Mr. Bishop was exposed to since he failed to quantify Mr. Bishop's exposure levels."[11]

---

[9] Spencer Declaration, ¶ 9.
[10] Spencer Declaration ¶ 9. and Attachment 1 thereto, ATSDR. 2007. Toxicological Profile for Benzene, August 2007, Appendix A, ATSDR Minimal Risk Levels and Worksheets, pp. A-1, A-2.
[11] Plaintiffs' Memorandum, p. 16.

This statement is not accurate. While Spencer did not perform his own retrospective exposure assessment, he did quantify the range of error in Rando's calculations, and therefore, it is proper to allow him to testify as to size of that error. Specifically, Spencer notes in his Report that even if one were to accept, for the sake of argument, Rando's flawed methodology, Rando's analysis yields a significant overestimate due to his use of incorrect and/or unsubstantiated assumptions and input parameters. Spencer specifically quantified the error range, and it is proper for him to provide his opinions quantifying the degree of error and what that means as to the exposure levels calculated by Rando. See Spencer Report, pp. 15-18.

### III. CONCLUSION

Mr. Spencer employed methods and practices widely accepted in the field of industrial hygiene in formulating the opinions he presents in his report. His opinions are amply supported by the scientific literature and the record evidence in this case.

For these reasons, Defendants pray that Plaintiffs' Motion to Exclude Testimony of John Spencer be denied.

By Attorneys:

*/s/Glenn Farnet*
Gary A. Bezet (#3036)
Glenn M. Farnet (#20185)
Brian W. Hightower (#29247)
KEAN MILLER HAWTHORNE D'ARMOND
MCCOWAN & JARMAN, LLP
P.O. Box 3513
Baton Rouge, Louisiana 70821
Telephone: (225) 387-0999
*Attorneys for El Paso Energy E.S.T Company, Marathon Oil Company, Shell Oil Company, and Shell Chemical L.P.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Memorandum in Support of Motion In Limine to Exclude Plaintiffs' Causation Experts, and for Summary Judgment was electronically filed with the Clerk of Court this 12th day of June, 2009, using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to the following counsel of record:

Lynn Eric Williams
Williams Law Office, LLC
3021 35th Street, Suite B
Metairie, LA 70001

James M. Garner
Christopher T. Chocheles
Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC
909 Poydras Street, 28th Floor
New Orleans, LA 70112-1033

Deborah DeRoche Kuchler
Abbott, Simses & Kuchler
400 Lafayette Street, Suite 200
New Orleans, LA 70130

Ronald A. Johnson
Janet W. Marshall
Johnson, Johnson, Barrios & Yacoubian
701 Poydras Street, Suite 4700
New Orleans, LA 70139-7708

Lynn M. Luker
Stephanie Beaugh
Lynn Luker & Associates, LLC
3433 Magazine Street
New Orleans, LA 70115

/s/Glenn M. Farnet
Glenn M. Farnet