UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JO ANN V. BISHOP et al. | * | Civil Action No.: 07-2832 |
| | * | |
| versus | * | Section: N  (Judge Engelhardt) |
| | * | |
| SHELL OIL COMPANY et al. | * | Magistrate: 5 (Judge Chasez) |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANTS'
PUTATIVE INDUSTRIAL HYGIENIST JOHN SPENCER**

Plaintiffs, Jo Ann V. Bishop and Shaun C. Bishop, individually and as the legal representatives of James Manuel Bishop, Jr., through undersigned counsel, submit this memorandum in further support of *Plaintiffs' Motion to Exclude the Testimony of Defendants' Putative Industrial Hygienist John Spencer*  (Rec. Doc. 207), and in response to the *Memorandum in Opposition to Plaintiffs' Motion to Exclude Testimony of Industrial Hygienist John Spencer* filed by El Paso Energy E.S.T. Company, Marathon Oil Company, Shell Oil Company, and Shell Chemical L.P. (Rec. Doc. 243) and in response to Defendant Radiator Specialty Company's adoption of that opposition memorandum (*see Defendant Radiator Specialty Company's Motion and Incorporated Memorandum for Leave to Join in and Adopt Co-*

*Defendants' Opposition to Plaintiffs' Motion to Exclude Defense Expert John Spencer* (Rec. Doc. 259) (which, upon information and belief, the Court has not yet granted).

Plaintiffs' motion should be granted, and the testimony of John Spencer excluded. For several reasons, as discussed below, his testimony is unreliable, it will not assist the trier of fact, and it fails to meet the minimal requirements for offering expert opinions under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) (en banc), *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999), and Fed. R. Evid. 702. *See also Navarrete v. General Ins. Co. of America*, No. Civ. A 07_4865, 2009 WL 1636967 (E.D. La. June 11, 2009) (Engelhardt, J.); *United Fire Group v. Duro_Last, Inc.*, No. Civ. A 05_1499, 2006 WL 5086616 (E.D. La. Sept. 21, 2006) (Engelhardt, J.).[1]

John Spencer's opinions concerning James Bishop's exposure (or lack of exposure) to benzene, while Mr. Bishop was working as a pipefitter at Defendants' facilities, should be excluded because: (1) Defendants, not Plaintiffs, have the burden of proving the admissibility of Spencer's testimony; (2) Spencer's methodology is unreliable; (3) Spencer's opinions will not assist the jury; and (4) Spencer has not offered any timely opinions concerning *specific* causation.

### I. DEFENDANTS, NOT PLAINTIFFS, HAVE THE BURDEN OF PROVING THE ADMISSIBILITY OF SPENCER'S TESTIMONY.

---

[1] As mentioned in Plaintiffs' original memorandum, this Court has issued several decisions addressing *Daubert* challenges to witnesses. *See generally Gustings v. Travelers & Standard Fire Ins. Co.*, No. Civ. A 07_4443, 2008 WL 4948837 (E.D. La. Nov. 18, 2008) (Engelhardt, J.) (discussing *Daubert* requirements); *Wyeth v. Rowan Companies, Inc.*, No. Civ. A 07_2823, 2008 WL 3975625 (E.D. La. Aug. 26, 2008) (Engelhardt, J.) (same); *Wilson v. Thompson/Center Arms Co., Inc.*, No. Civ. A 05_6493, 2007 WL 4727639 (E.D. La. Nov. 1, 2007) (Engelhardt, J.) (same); *NREC Power Systems, Inc. v. Miba Bearings U.S. L.L.C.*, No. Civ. A 05_4205, 2007 WL 2264756 (E.D. La. Aug. 2, 2007) (Engelhardt, J.). *See also U.S. v. Bennett*, No. 06_41233, 258 Fed. Appx. 671 (5th Cir. Dec. 13, 2007) (not designated for publication) (discussing *Daubert* requirements), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2904, 171 L.Ed.2d 844 (2008).

In their opposition, Defendants argue, incorrectly, that it is *Plaintiffs'* burden to submit expert testimony evaluating Spencer's methodology (Defs. Memo. at 2). To the contrary, it is well-settled that "[w]hen expert testimony is challenged under Daubert, the burden of proof rests with the party seeking to present the testimony," i.e., the *Defendants*.[2] "To meet this burden," this Court stated, "defendants cannot simply rely on their expert's assurances that [he] has utilized generally accepted scientific methodology."[3] "Rather," this Court concluded, "some objective, independent validation of the expert's methodology is required."[4]

## II.    SPENCER'S METHODOLOGY IS UNRELIABLE.

The United States Supreme Court's decision in Daubert provides the analytical framework for determining whether expert testimony is admissible under Fed. R. Evid. Rule 702.[5]  In *Daubert*, the Supreme Court held that the trial court must exercise a "gate-keeping" function to ensure that the proffered testimony is both *reliable* and *relevant*.[6]  In analyzing the *reliability* of proposed expert testimony, the role of the Court is to determine whether the expert is *qualified* in the relevant field and to examine the *methodology* the expert has used in reaching his conclusions.[7]

*Daubert* provides a two-pronged test for determining the admissibility of expert testimony. The first prong entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is *scientifically valid* and of whether that reasoning or

---

[2] *United Fire Group*, 2006 WL 5086616, at *3 (citing *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir.1998)).
[3] *Id.*
[4] *Id.*
[5] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Navarrete v. General Ins. Co. of America*, No. Civ. A 07_4865, 2009 WL 1636967, at *1 (E.D. La. June 11, 2009) (Engelhardt, J.); *United Fire Group v. Duro_Last, Inc.*, No. Civ. A 05_1499, 2006 WL 5086616 (E.D. La. Sept. 21, 2006) (Engelhardt, J.).
[6] *Daubert*, 509 U.S. at 589; *United Fire Group*, 2006 WL 5086616, at *2.
[7] *United Fire Group*, 2006 WL 5086616, at *2 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

methodology *properly can be applied to the facts in issue*.[8] Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate."[9]

Spencer's methodology is unreliable, and his opinions concerning Mr. Bishop's exposure (or lack of exposure) to benzene should therefore be excluded, for four reasons: (1) Spencer did not perform an exposure assessment; (2) he did not perform a benzene dermal calculation; (3) he failed to rely upon important and relevant peer-reviewed studies concerning general causation, including the landmark *Spear* study; and (4) he did not use the odor threshold methodology.

### A. Spencer's methodology is unreliable because he did not perform an exposure assessment.

The Reference Manual on Scientific Evidence, Reference Guide on Medical Testimony explains that "[c]ritical to a determination of causation is characterizing exposure."[10] Nevertheless, Spencer did not perform any modeling or an exposure assessment because he was not asked to do so by the defendants.[11]

Another judge has already precluded Spencer from offering testimony attacking a plaintiff's exposure assessment. In *Lavender v. Bear Corporation*, Spencer's opinions regarding a plaintiff's exposure assessment were excluded in a benzene leukemia case.[12] The court found that Spencer's methodology was flawed and his estimates in that case (as his estimates in this case) were mere "guesstimates" which did not simulate the kind of exposures experienced by the plaintiff.[13]

---

[8] *Daubert*, 509 U.S. at 595; *United Fire Group*, 2006 WL 5086616, at *2.
[9] *Daubert*, 509 U.S. at 595; *United Fire Group*, 2006 WL 5086616, at *2.
[10] *Id.* at 472.
[11] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 28-29.
[12] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 26-27.
[13] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 26-27.

Mr. Spencer testified that the OEL (occupational exposure limit) that he used in his report involves averages and would not tell if someone was exposed to unsafe levels of benzene (1ppm).[14]  Spencer's methodology is unreliable, and his opinions on exposure should be excluded, because he did not perform an exposure assessment for Mr. Bishop.[15]

### B. Spencer's methodology is unreliable because he did not perform a benzene dermal calculation.

Spencer admitted that Mr. Bishop had the potential for dermal benzene exposure at Defendants' facilities to crude oil, gasoline, and pyrolysis gas.[16]  He further conceded that Mr. Bishop had the potential for dermal benzene exposure when working with Liquid Wrench.[17]  Spencer agreed that humans can be exposed to benzene through inhalation, *dermal contact* and ingestion and that benzene can enter the body through dermal contact.[18]  Spencer testified that some pipefitters in the 1970s (such as Mr. Bishop) were exposed to high levels of benzene through dermal contact, and inhalation.[19]  Nevertheless, he failed to perform any benzene dermal calculation in this case.

Spencer admitted that he has used this methodology before and has performed a benzene dermal calculation in other litigation.[20]  He agreed that he could plug numbers in a model to perform a dermal calculation for benzene but he could not perform a dermal calculation without a model.[21]  Spencer further testified that if he was worried today about dermal exposure to benzene he could do biological monitoring but he couldn't do that in the 1970s.[22]

---

[14] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 73-74.
[15] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at1 9.
[16] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 60-61.
[17] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 63.
[18] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 38-39.
[19] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 56-57.
[20] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 21-22.
[21] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 22-23.
[22] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 22-23.

Spencer does not disagree with the methodology for dermal calculation for benzene exposure that was authored by Dennis Paustenbach and relied on by Dr. Rando, the Plaintiffs' exposure assessment expert.[23] Spencer also testified that there are several peer-reviewed studies that show how to calculate a dermal calculation for benzene exposure.[24]

The failure to use the benzene dermal exposure methodology renders Spencer's opinion on Mr. Bishop's exposure (or lack of exposure) unreliable.

### C. Spencer's methodology is unreliable because he failed to rely upon important and relevant peer-reviewed studies concerning general causation.

One of the nonexclusive factors which may be relevant to the *Daubert* reliability inquiry is: "whether the technique has been subjected to peer review and publication."[25] Defendants admit that the "appropriate methodology" in this case would include "guidance from documents from" NIOSH and OSHA (Defs. Memo. at 3). However, Spencer has ignored one of the key peer-reviewed studies on benzene exposure supporting OSHA's benzene exposure regulations: "Benzene Exposure in the Petroleum Refining Industry" (1987) by R.C. Spear et al. ("the Spear study"). Mr. Spencer admitted that the *Spear* study relied on by Dr. Rando were peer-reviewed.[26]

---

[23] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 34-35.
[24] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 39-40.
[25] *Daubert*, 509 U.S. at 593_94; Navarrete, 2009 WL 1636967, at *2; *United Fire Group*, 2006 WL 5086616, at *2.
[26] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 65.

    **D.    Spencer's methodology is unreliable because he did not use the odor threshold methodology.**

The odor threshold methodology created by Shell Oil was submitted to OSHA and NIOSH and validated with actual industrial hygiene data.[27] Mr. Spencer has used the odor threshold model in litigation.[28] The use of odor threshold to measure an exposure has been used in peer-reviewed literature to calculate an exposure assessment for decades. Shell has used odor thresholds to measure benzene exposures in employees for decades to calculate levels of benzene that employees were exposed to at Shell refineries. This information has been reported to various agencies in studying benzene exposures. Shell actually created a protocol for determining levels of exposure based on symptoms experienced by employees. Spencer's failure to use this methodology renders his opinions on exposure unreliable.

    **III.    SPENCER'S OPINIONS WILL NOT ASSIST THE JURY.**

The second *Daubert* prong, that is whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy.[29] Indeed, this examination is described in Daubert as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.[30] With respect to the determination of relevancy pursuant to Rule 702 and *Daubert*, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[31]

---

[27] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 32-33.
[28] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 42.
[29] *Daubert*, 509 U.S. at 591; *United Fire Group*, 2006 WL 5086616, at *2.
[30] *Daubert*, 509 U.S. at 595 (citing *United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir.1985)); *United Fire Group*, 2006 WL 5086616, at *2.
[31] *Navarrete*, 2009 WL 1636967, at *2 (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir.2003)).

Spencer's opinions concerning Mr. Bishop's exposure (or lack of exposure) to benzene will not assist the jury, and should be excluded, for these reasons: (1) Spencer is not sufficiently qualified to give those opinions;  (2) Spencer's opinions are based on a report he did not even write, documents he did not personally review, and data he did not even analyze himself; (3) he is biased; (4) he did not even review the relevant Material Safety Data Sheets;  (5) he does not even know the benzene content of pyrolysis gas, one of the benzene-containing products which Mr. Bishop was exposed to; (6) he did not even consider the historical testing data concerning Liquid Wrench;  (7) he was unaware of pipefitter benzene monitoring data for the Shell facility; and (8) he has ignored important and relevant circumstantial evidence concerning causation.

### A.   Spencer's opinions will not assist the jury because he is not qualified to give them.

As mentioned above, in analyzing the *reliability* of proposed expert testimony, the role of the Court is to determine whether the expert is *qualified* in the relevant field and to examine the methodology the expert has used in reaching his conclusions.[32]

Spencer has merely an *undergraduate* degree in biological sciences.[33]   He does not have a Masters or Ph.D.[34]  He cannot identify the name of a single case he is aware of involving chemical exposure where the plaintiffs' exposure assessment expert did not have a Masters or a Ph.D.[35]  Although chemistry is relevant to the opinions offered by Spencer in this case,[36] he has never qualified as an expert in biology, chemistry, or chemical engineering.[37]

---

[32] *United Fire Group*, 2006 WL 5086616, at *2 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).
[33] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 9.
[34] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 9.
[35]  Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 13-14.
[36]  Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 36.
[37]  Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 10,12.

Furthermore, although Spencer has repeatedly held himself out as a former employee of the National Institute of Health, after further inquiry it was revealed that he merely worked in a NIOSH chemistry lab as a *college student*:

> Q. And, Mr. Spencer, earlier you mentioned that you worked at the National Institute of Health in a laboratory. Are we talking about a job while you're in college?
>
> A. Correct.
>
> Q. Okay, and you feel that qualifies you to be an expert in that field?
>
> MR. PERRY: Object to form.
>
> MR. FARNET: I object.
>
> THE WITNESS: I'm simply saying that I've had -- I've worked in a chemistry lab....[38]

John Spencer is not sufficiently qualified by education, training and experience to offer opinions concerning Mr. Bishop's exposure which would materially assist the jury.

### B. Spencer's opinions will not assist the jury because they are based on a report he did not even write, documents he did not personally review, and data he did not analyze himself.

In his recent deposition, Spencer made the shocking admission that he did not even write his own report in this case.[39] He did not review all of the documents in this case because other employees at his company reviewed the documents and summarized them for him.[40] Another person analyzed the data presented as Spencer's opinions, and he did not even know whether that person had an advanced degree.[41] Under questioning, Spencer conceded the following:

---

[38] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 70.
[39] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 70.
[40] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 69.
[41] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 70.

> Q. Did you write your entire report in this case?
>
> A. No; I mean **I did not write the entire report. I had others**. **I had another industrial hygienist** help me working on this report, again **analyzing data** and double checking.
>
> Q. What's his name?
>
> A. Dale Johnson.
>
> Q. And what degrees does he have?
>
> A. I don't know his specific degrees. He's a certified industrial hygienist.
>
> Q. Does he have a Masters?
>
> A. I honestly don't know.[42]

In *Transcontinental Gas*, Judge Berrigan of this Court has explained that "ghost_writing" an expert report is "the preparation of the substan[tive] writing of the report by someone other than the expert purporting to have written it."[43] Judge Berrigan added that "[u]nquestionably, Rule 26 requires an expert witness to prepare his own Rule 26 Report."[44] The party seeking exclusion of the expert bears the burden of proving ghost-writing.[45] Clearly, there is impermissible ghostwriting when the ghostwriter "provided the substance of the opinions of the testifying experts, not just editorial assistance."[46] In *Transcontinental Gas*, Judge Berrigan found as a matter of fact that the expert's reports had *not* been ghostwritten, i.e., that "the substantive

---

[42] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 70 (emphasis added).
[43] *Transcontinental Gas Pipeline Corp. v. Societe d'Exploitation du Solitaire, S.A.*, No. Civ. A 05_1295, 2007 WL 2712936, at *4 (E.D. La. Sept. 13, 2007) (Berrigan, J.) (quoting *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 291 (E.D. Va.2001)) (internal quotations omitted).
[44] *Transcontinental Gas*, 2007 WL 2712936, at *4 (quoting *Trigon Ins. Co. v. United States*, 204 F.R.D. at 291) (internal quotations omitted).
[45] *Transcontinental Gas*, 2007 WL 2712936, at *4.
[46] *Transcontinental Gas*, 2007 WL 2712936, at *4.

writing of the reports was by someone other than" the experts.[47] Other courts have excluded expert testimony where the reports were prepared by others. For example, in *Semtech*, the federal district court granted the plaintiff's motion in limine to preclude a defense expert from testifying at trial where the expert admitted that edits to his report had been made by others.[48] In *DirecTV*, the federal district court noted that Federal Rule of Civil Procedure 26(a)(2)(B) "clearly requires an expert witness to prepare and sign his own report" and "[p]reparation implies involvement other than perusing a report drafted by someone else and signifying agreement therewith."[49]

### C. Spencer's opinions will not assist the jury because of his bias.

Spencer conceded that he routinely testifies *solely for the defendants* because that is who supports him scientifically and who he looks for.[50]

### D. Spencer's opinions will not assist the jury because he did not even review the relevant Material Safety Data Sheets.

Spencer admitted, incredibly, that in formulating his opinions in this case, he did not even bother to review the Defendants' Material Safety Data Sheets (MSDSs) for the products involved in this case and he does not know the levels that health effects are listed to occur.[51] He further conceded that he does not know the exposure levels that adverse health effects are listed to occur on the MSDS sheets.[52]

---

[47] *Id.*
[48] *Semtech Corp. v. Royal Ins. Co. of Am.*, No. 03_2460, 2007 WL 5462339 (C.D. Cal. Oct. 24, 2007).
[49] *DirecTV, Inc. v. Henley*, No. 04_CA_83, 2005 WL 6217786 (W.D. Tex. Jan. 31, 2005).
[50] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 45-46.
[51] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 55.
[52] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 55.

> E. **Spencer's opinions will not assist the jury because he does not even know the benzene content of pyrolysis gas, one of the benzene-containing products which Mr. Bishop was exposed to.**

As mentioned, Spencer conceded that Mr. Bishop had the potential for dermal benzene exposure to crude oil, gasoline, and *pyrolysis gas*.[53]  However, remarkably, Mr. Spencer does not even know the benzene content of pyrolysis gas.[54]

> F. **Spencer's opinions will not assist the jury because he did not even consider the historical testing data concerning Liquid Wrench.**

As mentioned, Spencer admitted that Mr. Bishop had the potential for dermal benzene exposure when working with Liquid Wrench.[55]  He testified that a recent study identified that individuals exposed to Liquid Wrench resulted in benzene levels of 3.8 ppm.[56]  But Spencer did not know that historical testing of workers filling cans of Liquid Wrench yielded benzene air levels between 24.5 and 29ppm.[57]

> G. **Spencer's opinions will not assist the jury because he is unaware of pipefitter benzene monitoring data for the Shell facility.**

Mr. Spencer was also unaware that pipefitter benzene monitoring data evidenced levels up to 146.7 ppm for the Shell facility, well beyond the harmful exposure level.[58]

> H. **Spencer's opinions will not assist the jury because he has ignored important and relevant circumstantial evidence concerning causation.**

The Bishops wish to address Defendants' repeated, and legally specious, argument that Plaintiffs supposedly cannot prove the "specific" levels of benzene that Mr. Bishop was exposed to or inhaled at Defendants' facilities because *Mr. Bishop* (who, as mentioned, died because of

---

[53] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 60-61.
[54] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 61-62.
[55] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 63.
[56] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 64-65.
[57] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 63-64.
[58] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 66-67.

*Defendants' actions*) did not provide *direct testimony* about smelling gasoline or diesel at Defendants' jobs (see Defs. Memo. at 8-9 and elsewhere).  The Bishops are not offering Mr. Bishop's co-worker, Robert Fuxan, as a "surrogate plaintiff" (Defs. Memo. at 8).  They are offering him as a fact witness, who worked with Mr. Bishop at Defendants' plants (albeit not every moment of every workday), and who was aware that he, Mr. Bishop, and other pipefitters were exposed on a daily basis to gasoline, crude oil, pyrolysis gas, and diesel--which Defendants admit contain benzene.  Other important pieces of circumstantial evidence--including studies of pipefitters' exposure to benzene, the testimony of Jo Ann Bishop, Defendants' own documents outlining the exposure of workers such as Bishop and Fuxan to benzene-containing gasoline, crude oil, pyrolysis gas, and diesel, Defendants' own admissions that pipefitters were exposed to benzene and died of multiple myeloma, and the Affidavit of *Defendants'* former health and safety executive, Frank Parker--are relevant *circumstantial* evidence of Mr. Bishop's exposure to benzene at Defendants' facilities.

If the direct testimony of the plaintiff was the only permissible method of proving chemical exposure, the family of a worker who died before suit was filed could never succeed at trial.  This is, of course, not the law of this State and Defendants' continual misrepresentation of the law is legally erroneous.

As recently recognized by this Court, facts or causation may be proven "by direct **or circumstantial evidence**."[59]  In *Eschete*, this Court denied defendants' motion for summary judgment on causation where there was circumstantial evidence (but no direct evidence) that the

---

[59] *Khalimsky v. Liberty Mut. Fire Ins. Co.*, No. Civ. A. 07_8959, 2009 WL 982641, at *8 (E.D. La. Apr. 13, 2009) (Engelhardt, J.) (emphasis added) (citing *Jordan v. Travelers Insurance Co.*, 245 So.2d 151 (La.1971) and *Town of Slidell v. Temple*, 164 So .2d 276 (La.1964)), *reconsideration denied*, No. Civ. A. 07_8959, 2009 WL 1565934 (E.D. La. June 2, 2009).

decedent was taking defendants' product at the time of his death.[60] In *DirecTV*, this Court denied summary judgment based on circumstantial evidence of defendants' fault.[61] As noted by the Louisiana Supreme Court in *Hanks*, circumstantial evidence is "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred."[62] "Use of circumstantial evidence and the deductions and inferences arising therefrom," the Supreme Court continued, "is a common process for establishing liability in negligence cases."[63]

Spencer has disregarded--without any valid reason--the overwhelming circumstantial evidence concerning Mr. Bishop's exposure to benzene at Defendants' facilities, including, without limitation: the sworn affidavits and sworn deposition testimony of Robert Fuxan; the sworn deposition testimony of Jo Ann Bishop; the sworn affidavit of Shell's employee Frank Parker; the Spear study--which forms the basis for OSHA's benzene regulations; OSHA's benzene regulations; internal documents from Shell regarding pipefitters' exposure to benzene and development of multiple myeloma; internal documents from Shell, El Paso, and Marathon regarding the benzene content of products which pipefitters such as Mr. Bishop were exposed to; and MSDS sheets from Defendants demonstrating the known risks of benzene.

The Bishops also wish to address Defendants' specious argument that the Exhibit B, Affidavit of Frank Parker is "irrelevant" (Defs. Memo. at 11). Parker was <u>Shell's</u> Industrial Hygiene Services manager.[64] Parker's affidavit demonstrates that Shell had a corporate policy of

---

[60] *Eschete ex rel. Eschete v. Roy*, 554 F.Supp.2d 628, 633 (E.D. La. Apr. 29, 2008) (Engelhardt, J.) ("Plaintiffs have presented no direct evidence indicating that Eschete ingested Cymbalta prior to his death. However, **there is circumstantial evidence which could be found to support either party's claims**. Because these issues are heavily factual and require that the fact finder review all the evidence and make credibility determinations as to which contention is correct, the Court denies summary judgment on the issue of whether Eschete was taking Cymbalta at the time of his death.") (emphasis added).
[61] *DirecTV, Inc. v. Atwood*, No. Civ. A 03_1457, 2005 WL 1458642, at *2 (E.D. La. May 24, 2005) (Engelhardt, J.) ("The circumstantial evidence submitted by Plaintiff, considered as a whole and in its favor, creates genuine issues of material fact.").
[62] *Hanks v. Entergy Corp.*, 944 So.2d 564, 578-79 (La. 2006).
[63] *Id.*
[64] Exhibit B, Affidavit of Frank Parker, May 4, 2009, ¶ 3,4,5 (previously attached to Plaintiffs' motion in limine).

keeping contractors (such as Mr. Bishop's employer) and contractors' employees (such as Mr. Bishop) "in the dark" about the hazards of benzene exposure, by: isolating the contractors[65]; failing to hire an industrial hygienist at Shell Norco[66]; deciding not to warn workers (such as Mr. Bishop) of the hazards of benzene in the 1970s[67]; and failing to tell contractors (such as Mr. Bishop's employer) or their employees (such as Mr. Bishop) that they had been exposed to benzene.[68] Parker's affidavit also demonstrates that pipefitters (such as Mr. Bishop) changing valves, pumps, and while performing maintenance, turnarounds, and new construction at Shell Norco in the 1970s were frequently and regularly exposed to unsafe levels of benzene[69] and that Shell Oil knew that benzene could cause blood disorders such as, aplastic anemia and leukemia in the 1970s.[70] Spencer's failure to give any weight to this important evidence renders his opinion useless to the jury.

Here, Spencer calculated a <u>1.59 ppm</u> daily exposure for benzene at the Shell Norco facility from the data for 1977 through 1985.[71] Mr. Spencer testified that if someone is exposed to levels in excess of the health standard that they could contract a blood disorder.[72] The purpose of the 1ppm 8 hour time weighted average is to prevent benzene related diseases.[73] Yet Spencer has ignored the most important circumstantial evidence in this case which indicates that Mr. Bishop was exposed to benzene levels far above 1ppm. *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999).

---

[65] Exhibit B, Affidavit of Frank Parker, May 4, 2009, ¶ 9.
[66] Exhibit B, Affidavit of Frank Parker, May 4, 2009, ¶ 7.
[67] Exhibit B, Affidavit of Frank Parker, May 4, 2009, ¶ 25.
[68] Exhibit B, Affidavit of Frank Parker, May 4, 2009, ¶ 27.
[69] Exhibit B, Affidavit of Frank Parker, May 4, 2009, ¶ 18,34-36.
[70] Exhibit B, Affidavit of Frank Parker, May 4, 2009, ¶ 32.
[71] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 21.
[72] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 52.
[73] Exhibit R-1, Deposition of John Spencer, July 1, 2009, at 53.

**IV.    SPENCER HAS NOT OFFERED ANY OPINIONS ABOUT *SPECIFIC CAUSATION* AND SHOULD BE PRECLUDED FROM OFFERING ANY SUCH OPINIONS AT TRIAL.**

Again, even if this Court does not preclude Spencer from providing any expert opinions about *general* causation, the Court should preclude him from testifying concerning *specific* causation. Spencer should not be permitted to testify about whether Mr. Bishop's exposure to benzene did (or did not) cause his death from multiple myeloma.[74]

Defendants have not contradicted Plaintiffs' assertion that, under the Federal Rules of Civil Procedure, Rule 26(a)(2)(B), Defendants were required to produce a written report by each proposed expert which contained a complete statement of "**all opinions** the witness will express" and the basis and reasons for them (emphasis added). As noted by this Court, to eliminate unfair surprise, the drafters of this rule "saw fit to require the parties also to disclose the substance of the expert opinion testimony and the basis of such opinion."[75]

In his expert report in this case, Spencer did not offer *any* opinions about *specific* causation by failing to calculate an exposure assessment for Mr. Bishop. Accordingly, to preserve the purpose and integrity of the pretrial orders in this case, and to comport with the Federal Rules of Civil Procedure, Spencer should be precluded from offering any expert opinion testimony regarding specific causation which was not memorialized in writing and timely exchanged.[76]

## CONCLUSION

Plaintiffs respectfully request that this Court grant their motion in limine and preclude John Spencer from offering expert opinions in this case.

---

[74] *See Knight v. Kirby Inland Marine, Inc.*, 482 F.3d at 351 ("specific causation is whether a substance caused a particular individual's injury") (*quoting Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 714 (Tex.1997)).
[75] *Gilmore v. WWL_TV, Inc.*, No. Civ. A 01_3606, 2002 WL 31819135, at *2 (E.D. La. Dec. 12, 2002) (Engelhardt, J.).
[76] *Gilmore v. WWL_TV, Inc.*, 2002 WL 31819135, at *2.

Respectfully Submitted:

*/s/ Lynn Eric Williams, Jr.*
Lynn Eric Williams, Jr., LSBN 26773
**WILLIAMS LAW OFFICE, LLC**
3021 35th St., Ste. B
Metairie, Louisiana 70001
Telephone: (504) 832-9898
Facsimile: (504) 832-9838
E-mail: eric@toxictortlaw.net
**ATTORNEY FOR PLAINTIFFS**

*/s/ John F. Young, Jr.*
John F. Young, Jr., LSBN 01659
609 Metairie Road, #300
Metairie, Louisiana 70005
Telephone: (504) 352-8855
Facsimile: (504) 836-6565
E-mail:jfylaw@yahoo.com
**ATTORNEY FOR PLAINTIFFS**

*and*

*/s/ Richard J. Fernandez*
Richard J. Fernandez, LSBN 05532
**LAW OFFICE OF RICHARD J. FERNANDEZ, LLC**
3000 West Esplanade Avenue, Suite 200
Metairie, Louisiana 70002
Telephone: (504) 834-8500
Facsimile: (504) 834-1511
E-mail: rick@rjfernandezlaw.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that this pleading has been served upon all counsel via electronic filing, this 6th day of July, 2009.

*/s/ Richard J. Fernandez*
RICHARD J. FERNANDEZ

**EXHIBITS TO
PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF
DEFENDANTS' PUTATIVE INDUSTRIAL HYGIENIST
JOHN SPENCER**

R-1    Deposition of John Spencer, July 1, 2009, at 9-14, 21-29, 32-42, 45-46, 52-57, 60-74.